776 So.2d 953 (2000)
Thomas SOLOMOS and Lucas Pitters, on Behalf of themselves and all others similarly situated, Appellants,
v.
Sheriff Ken JENNE, as Sheriff of Broward County, Appellee.
No. 4D00-600.
District Court of Appeal of Florida, Fourth District.
December 20, 2000.
Rehearing Denied February 1, 2001.
*954 Steven Wisotsky of Steven Wisotsky, P.A., Miami, and Gary Kollin, P.A., Fort Lauderdale, for appellants.
Bruce W. Jolly and Alexis M. Yarbrough of Purdy, Jolly & Giuffreda, P.A., Fort Lauderdale, for appellee.
STONE, J.
Solomos and Pitters ("Prisoners") appeal a judgment granting Sheriff Jenne's motion for summary judgment and denying their cross-motion for summary judgment. We affirm.
Prisoners, inmates at the Broward County Jail, assert, inter alia, that section 951.033, Florida Statutes, is void for vagueness and unconstitutional as applied. Section 951.033 provides:
(1) The Legislature finds that there is an urgent need to alleviate the increasing financial burdens on local subdivisions of the state caused by the expenses of incarcerating prisoners. In addition to a prisoner's cash account on deposit in local detention facilities, many prisoners have sources of income and assets outside of the facility....
(2) The local detention facility shall determine the financial status of prisoners for the purpose of paying from their income and assets all or a fair portion of their daily subsistence costs. In determining the financial status of prisoners, any income exempt by state or federal law shall be excluded. Consideration shall be given to the prisoner's ability to pay, the liability or potential liability of the prisoner to the victim or guardian or the estate of the victim, and his or her dependents.
(3) The chief correctional officer of a local subdivision may direct a prisoner to pay for all or a fair portion of daily subsistence costs. A prisoner is entitled to reasonable advance notice of the assessment and shall be afforded an opportunity to present reasons for opposition to the assessment.
* * *
(5) The chief correctional officer may seek payment for the prisoner's subsistence costs from:
(a) The prisoner's cash account on deposit at the facility; or
(b) A civil restitution lien on the prisoner's cash account on deposit at the facility or on other personal property.
(6) If the prisoner's cash account at the local detention facility does not contain sufficient funds to cover subsistence costs, the chief correctional officer may place a civil restitution lien against the prisoner's cash account or other personal property.
§ 951.033, Fla.Stat.
On the authority of section 951.033, the sheriff implemented Standard Operating Procedure ("SOP") 1.2.12, which provides that inmates will be charged a one-time fee of $10.00 to defray the costs of uniforms and a daily subsistence fee of $2.00. Both *955 charges are deducted from each inmate's cash account held by the sheriff.
The policy defines an indigent inmate as one with a zero balance in his account. A judicial declaration that an inmate is indigent does not preclude the imposition of fees so long as the inmate actually has funds in his or her account. The record reflects that jail administrators determine an inmate's financial status by simply looking at the status of the account. If there is a positive balance, the inmate is deemed prima facie financially able to pay the subsistence costs. Inmates acquitted or discharged on all charges are reimbursed for their daily subsistence charge upon request made within thirty days of their release.
The record is clear that although SOP 1.2.12 may allow a negative balance to accrue on an inmate's account, the administrators do not employ this procedure. If an account's balance is zero, no subsistence costs are assessed against it. In other words, subsistence costs are assessed only against a positive balance in the account and only to the extent of the current costs.
Inmates are notified of the jail's policy by a posting in each housing unit and the inmate handbook. Each inmate receives a copy of the inmate handbook. In addition, the handbook describes the grievance procedure whereby an inmate may object to the operations or procedures of the facility. The handbook lists only classification status, disciplinary action, and housing assignments as non-grievable, and it suggests that inmates make further inquiry if they have questions about subsistence costs. If an objection to subsistence costs is sustained, those costs will be refunded to the inmate.
The record also reflects that safeguards have been imposed to prevent improper deductions. These include a refusal to accept social security or government checks, to prevent money exempt by state or federal law from being used to pay subsistence costs. Further, subsistence costs are not deducted if they are needed to satisfy child support, court fees, or restitution orders, and will be refunded if the refund would allow an inmate to post bond.
The federal district court interpreted section 951.033 in McLeod v. Henderson, No. 98-1534-CIV-T-17A, 1999 WL 1427749 (M.D.Fla. Dec.28, 1999). In McLeod, a prisoner challenged a county jail's practice of charging booking fees, arguing that the removal of "booking" fees from a prisoner account violated section 951.033, which allows a prisoner to be directed to pay daily subsistence costs, not booking fees. Id. at *1-2. The court disagreed, finding that the legislature intended to "alleviate the financial burdens caused by the expenses of incarcerating prisoners[,]" and the booking stage is part of the process of incarcerating prisoners properly charged to the prisoner. Id. at *3. The court also rejected the prisoner's argument that the sheriff had violated section 951.033(2) by not determining the prisoner's financial status before removing funds from his account. The court concluded that the fact that the detention facility could deduct fees only if there was money in the account proved that a determination as to the prisoner's financial status had been made. Id. Ultimately, the court dismissed the complaint, finding it frivolous and without merit.
Here, Prisoners also question whether the $10.00 "uniform fee" or "processing fee" constitutes subsistence costs under the statute. Prisoners do not dispute that uniforms constitute subsistence costs but dispute that "processing fees" do. The inmate handbook attributes the $10.00 fee to processing; however, the record reflects that the SOP and practice of the jail provides that this fee defrays the costs of uniforms. Nothing in the record suggests that this fee is used for anything else. Certainly, clothing is included within the term "subsistence." Further, as in McLeod, processing is an expense of incarcerating prisoners.
*956 In addition, the sheriffs SOP and practice does not violate the statute. As in McLeod, the sheriffs practice of deducting fees only from accounts with positive balances demonstrates that determinations as to financial status are effectively made with regard to each deduction. Further, nothing prevents the inmate from bringing other liabilities to the attention of the administration.[1]
We also reject Prisoners' contention that due process requires additional notice and the opportunity for a hearing prior to the charging the cash account. See, e.g., Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).
Fuentes recognized that although due process requires a hearing prior to a governmental taking depriving one of a "significant property interest," there may be "variances in the form of a hearing `appropriate to the nature of the case.'" Fuentes also held that such hearing should be held "before" the deprivation, "except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." Fuentes, 407 U.S. at 81-82, 92 S.Ct. 1983. Seizure without an opportunity to be heard is proper only if the seizure is directly necessary to secure an important governmental interest, there is a special need for very prompt action, and the person initiating seizure is a governmental official responsible for determining, under the standards of a statute, that seizure is necessary and justified. Id. at 91, 92 S.Ct. 1983. The court must also consider the nature of the private interest being affected. Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The Supreme Court further clarified the hearing question in Mitchell v. W.T. Grant Co. by stating:
[The long line of cases culminating in Fuentes] merely stand for the proposition that a hearing must be had before one is finally deprived of his property and do not deal at all with the need for a pre[-]termination hearing where a full and immediate post-termination hearing is provided. The usual rule has been "[w]here only property rights are involved, mere postponement of the judicial enquiry[inquiry] is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate."
416 U.S. 600, 611, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).
The legislature has recognized that charging subsistence fees to alleviate the financial burden of incarcerating prisoners is an important governmental interest. The need for prompt action by the sheriff in seizing the available funds is apparent here, as failing such, the ends of the statute would frequently be defeated. Further, the property interest at stake here is not, objectively, a substantial one. We recognize that, subjectively, monies may well be significant to an individual prisoner with no, or little, additional funds in the account on any given day, depriving him or her of the ability to make "canteen" type purchases. We also recognize that the length of the periods of incarceration, in terms of multiples of the $2.00 charge, may cumulatively result in more substantial loss in some instances. Nevertheless, an inmate is not deprived of essential everyday subsistence due to lack of funds and is only deprived of money in the cash account until there is an opportunity to be heard through the grievance system. The sheriffs procedures also provide inmates an opportunity to be heard before a prisoner is finally deprived of his property. A prisoner may file a grievance or claim for refund, and a prisoner may also appeal that administrative decision pursuant to an appeal process established by the sheriff. In addition, an inmate always has the option of not maintaining funds in the account. *957 Thus, we conclude that the sheriff's procedure complies with the due process requirements set forth in Fuentes and modified by Mitchell.
The trial court also did not err in recognizing that the sheriffs procedure gives reasonable notice to inmates that a hearing is available. The sheriff's policy is posted in each housing unit and reproduced in the employee handbook. It is irrelevant that the $10.00 fee is referred to as both a uniform fee and a processing fee, as the inmates are put on notice of the fee and that they can object through the jail's procedure.
We also conclude that section 951.033 is not overly vague, nor does it give the sheriff unfettered discretion. The statute sets forth factors for the sheriff to consider in determining "financial status" and whether an inmate has the "ability to pay." The statute need not define what makes an inmate "indigent" per se, as its guidelines for determining financial status and ability to pay achieve the same result. "Ability to pay" is not an ambiguous term and can be given its plain and ordinary meaning. The existence of funds in an account demonstrates prima facie ability to pay. Further, "a fair portion" need not be defined because the sheriff may require inmates to pay all or a fair portion of subsistence costs. This allows the sheriff to enforce the statute to its fullest or accept less from inmates.
Although we have not addressed all of Prisoners' arguments, we have considered each in deeming the statute constitutionally applied and in upholding the sheriffs procedure.
GUNTHER and FARMER, JJ., concur.
NOTES
[1] As we look to McLeod only for guidance in interpreting this statute, we need not consider Prisoners' contention that the district court should have abstained from or otherwise limited its construction of the statute.